**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | |
|---|---|
| BAO FAMILY HOLDINGS, LLC and BRETT A. OSBORN, individually and on behalf of all others similarly situated )<br><br>*Plaintiffs*, )<br><br>v. )<br><br>GEMINI TRUST COMPANY LLC, CAMERON WINKLEVOSS, an individual, TYLER WINKLEVOSS an individual, and JOHN DOES 1-10, unknown persons )<br><br>*Defendants*. | Class Action<br><br>Civil Action. No.<br><br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiffs BOA Family Holdings LLC and Dr. Brett Osborn (collectively "Plaintiffs") individually and on behalf of all others similarly situated, allege the following against Defendants (defined below) based upon the investigation of Plaintiffs and their counsel and upon information and belief, except as to allegations specifically pertaining to Plaintiffs, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      Between February 2021 and November 16, 2022, Defendants engaged in the unregistered offer and sale of securities to U.S. retail investors, in violation of, among others, the Securities Act of 1933 through a New York Limited Trust company named Gemini Trust Company, LLC ("Gemini").  Termed the "Gemini Earn" or "Earn" program, Gemini solicited investments for interest yields on cryptocurrency assets placed in Gemini's custody.  Gemini, who through relationships with non-party Genesis Global Capital, LLC ("Genesis") and via the Gemini

platform then transferred custody of users' cryptocurrency assets to Genesis in exchange for interest payments thereupon. Genesis promised to pay interest on those assets to Gemini and Earn users. Through Gemini's unregistered offering, Defendants raised billions of dollars of digital assets, principally from parties like the Plaintiffs and members of the proposed class.

2.      Plaintiffs bring this class action (the "Action") against Defendants Gemini, Cameron Winklevoss, Tyler Winklevoss, and John Does 1-10 ("Defendants") under Sections 5, 12 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77e, 77l, and 77o. This Action is brought on behalf of all investors ("Class") who invested in securities offered by Defendant Gemini through the so-called "Gemini Earn" program ("Offering" or "Earn Program") conducted between approximately February 2021 and through November 2022 (the "Class Period").

3.      The allegations set forth herein are based in part on the publicly filed pleadings in the matters captioned *In re: Genesis Global Holdco, LLC, et al.*, Case No. 23-10063 (SHL) (Bankr. S.D.N.Y.), *SEC v. Genesis Global Capital, LLC., et al.*, Case No. 23-cv-00287 (S.D.N.Y.), *Gemini Trust Company, LLC v. Digital Currency Group, Inc. and Barry Silbert*, Case No. 1:23-cv-06864-LJL; *The People of the State of New York v. Genesis Global Capital, LLC, et al.*, Index No. 452784/2023 (Sup. Ct. N.Y.) ("NYAG Action"); and *U.S. v. Samuel Bankman-Fried*, 22-cr-673 (LAK) (S.D.N.Y.). Plaintiffs further believe substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

4.      The Securities Act requires any security that is offered or sold to be registered with the United States Securities and Exchange Commission ("SEC"). The legislative purpose is to protect the public by requiring various disclosures so that investors can better understand the security that is being offered or sold. Under Section 2(a)(1) of the Securities Act (15 U.S.C. §

77b(a)(1)), a "security" is defined to include a "note" and an "investment contract."

5.      Through the Gemini Earn program, Gemini offered interest yield on cryptocurrency via a "Master Digital Asset Loan Agreement" between Genesis and Gemini ("Gemini Earn Agreement") and users like plaintiff BAO Family Holdings LLC. Under these agreements, Gemini provided Earn users with access to Genesis, to what Gemini described as institutional grade investors which otherwise only engaged in digital asset transactions with large institutions and accredited investors.  Gemini Earn users like Plaintiffs gave custody of digital assets to Gemini, a New York Trust Company, who in turn provided those digital assets to Genesis.

6.      Genesis was the issuer and entity that received, pooled, deployed, and paid interest on Earn user assets. Genesis pooled the digital assets from Gemini Earn users with assets from "Accredited investors" and other investors and then deployed the digital assets, primarily by lending to institutional counterparties including FTX Trading Ltd. ("FTX") and Three Arrows Capital ("3AC").

7.      Genesis earned revenue by lending the assets at a higher rate than it paid to Gemini Earn users and other investors and by earning management fees. Genesis would send interest payments to Gemini, which would then deduct an "Agent Fee"[1] before distributing the remainder of the interest payments to Gemini Earn users. Gemini marketed the Gemini Earn program through social media and Gemini's website, touting high interest yields Gemini Earn and claims concerning Gemini's reputation for trustworthiness.

8.      The Gemini Earn Agreements, as offered and sold through the Gemini Earn program, were securities that Genesis and Gemini offered and sold to the investing public.

9.      But the Gemini Earn Agreements in which Plaintiffs and the Class invested were

---

[1] This Agent Fee forms in part the basis of Plaintiffs claims under the NY Trust Law (discussed *infra*).

neither registered as required under the Securities Act, nor subject to any exemption from registration. As a result, Earn users lacked material information about the Gemini Earn program that would have been relevant to their investment decisions.

10.     The U.S. investors who participated in the Gemini Earn program suffered significant harm.

11.     In violation of their obligations under the New York Trust Company law, Gemini knowingly concealed information concerning Genesis' solvency in the weeks and months leading to suspension of withdrawals from the Earn Program yet continued to market the Gemini Earn program to users.

12.     On November 16, 2022, Genesis announced it freeze withdrawal requests since "withdrawal requests have exceeded our current liquidity" following volatility in the crypto asset market. At the time it is believed Genesis held crypto assets of Earn users then equal to roughly $900 million dollars from a total of 340,000 Earn users, most of whom reside in the United States. On the same day, Gemini announced a suspension of withdrawals from the Gemini Earn Program.

13.     On January 20, 2023, Genesis filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code, imperiling the funds of Plaintiffs and the Class.

## **PARTIES**

14.     At all times herein, Plaintiff BAO Family Holdings is a Florida Limited Liability Company with offices in Palm Beach County, Florida that made purchases of cryptocurrencies from Gemini in U.S. Dollars and through the Gemini platform under Gemini's custody and supervision placed those assets into the Gemini Earn Program.

15.     At all times herein, Plaintiff Brett Osborn is an individual and a citizen of the State of Florida, Palm Beach County, who made purchases of cryptocurrencies from Gemini in U.S.

Dollars, transferred cryptocurrency assets to Gemini owned by him, and through the Gemini Earn program his assets were loaned by Gemini to Genesis.

16.     Defendant Gemini is a foreign limited liability company, hailing from New York, which was founded in 2014. Gemini is beneficially owned and controlled by defendants Cameron Winklevoss and Tyler Winklevoss through Winklevoss Capital Fund, LLC. Gemini's principal place of business is in New York, New York. Gemini is registered as a New York limited purpose trust company with the New York State Department of Financial Services ("NYSDFS").  Gemini does *not* hold an NMLS license to operate as a money transmitter in the State of Florida.

17.     Upon information and belief, Defendant Tyler Winklevoss is a resident of New York, New York and was at all times hereto, the CEO of Gemini and owner of Winklevoss Capital Fund LLC.

18.     Upon information and belief, Defendant Cameron Winklevoss is a resident of New York, New York and was at all times hereto, the co-CEO of Gemini and owner of Winklevoss Capital Fund LLC.

19.     Upon and information John Doe Defendants 1-10 are unidentified persons who from time to time during the Class Period served as managers of Gemini and who are co-liable for Gemini's conduct set forth herein.

## **JURISDICTION**

20.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this Action arises under the laws of the United States, including the Securities Act of 1933 and the Securities Exchange Act of 1934.

21.     This Court has jurisdiction under Section 27 of the Exchange Act, 15 U.S.C. § 78aa(a), which provides that federal district courts have exclusive jurisdiction over violations of

the Exchange Act, including claims brought under Sections 10(b) and 20(a) and SEC Rule 10b-5.

22.     This Court also has jurisdiction under 28 U.S.C. § 1337, because the claims arise under Acts of Congress regulating commerce, including the federal securities laws.

23.     This Court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which at least one member of the proposed Class is a citizen of a state different from at least one Defendant, the proposed Class consists of more than 100 members, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

24.     The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' state-law claims, including claims for breach of fiduciary duty, breach of contract, violations of the Florida Deceptive and Unfair Trade Practices Act, New York General Business Law, and Florida's Money Transmitter Act, because those claims form part of the same case or controversy as Plaintiffs' federal securities claims.

25.     The Court has personal jurisdiction over all Defendants because each Defendant purposefully directed their activities toward this District; transacted business with residents of this District; committed tortious acts within or causing injury within this District; and received funds, assets, and digital-asset transfers from Plaintiffs and Class Members residing in this District through the Gemini platform and the Gemini Earn program. Gemini is additionally registered to do business in Florida and maintains a registered agent within the State of Florida.

26.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including Plaintiffs' deposits of U.S. dollars, purchases of digital assets, and transfers of those assets to Gemini; because Plaintiffs and many Class Members reside in this District; and because

Defendants transact business in this District and are subject to personal jurisdiction here.

**FACTS COMMON TO ALL COUNTS**

27.     On November 16, 2022, Genesis Global Capital announced it would cease honoring redemption requests from investors, meaning no investor or Gemini Earn user, including Plaintiffs, could redeem assets which were tendered to Gemini. On the same date, Gemini notified Plaintiffs and other members of the Class who had custodied their assets with Gemini that withdrawals from the Gemini Earn program were suspended.

28.     At all times before the suspension of withdrawals, Gemini consistently marketed the Gemini Earn program as a safe, secure, and flexible means of earning yield on digital assets, and repeatedly represented that customers could redeem or withdraw their assets "at any time." Gemini emphasized its status as a New York limited purpose trust company regulated by NYSDFS and promoted itself as a "full-reserve exchange and custodian," creating the reasonable expectation users' assets would remain protected and accessible. Gemini's public-facing materials and advertisements described Earn as a program backed by rigorous risk management, partner due diligence, and institutional-grade oversight.

29.     Gemini's status as a New York limited purpose trust company, and its acceptance of customer digital assets for custody, safekeeping, and administration, created a special relationship of trust and confidence between Gemini and its Gemini Earn users. Under New York law, this relationship imposed heightened duties of care, prudence, disclosure, honesty, and loyalty that go beyond the obligations of ordinary commercial parties.

30.     Throughout the Class Period, Gemini represented that it vetted "accredited" institutional borrowers through a risk management framework that reviewed collateralization, cash flow, balance sheet strength, and financial statements. Gemini stated that its lending partner's loans

CLASS ACTION COMPLAINT

7

were "overcollateralized," and that its risk team conducted ongoing analysis of borrower's financial condition. Gemini also suggested that Genesis was *one* of *several* third-party institutional borrowers, when in fact Genesis was the *sole* borrower for *all* Gemini Earn assets.

31.     Gemini further advertised that redemption requests would be honored promptly, and in typical circumstances "immediately," and that "in all cases" funds loaned through Earn would be returned within a fixed, short window. Archived versions of the Gemini Earn webpage show that Gemini represented to customers that redemption rights were unconditional and that Earn users retained the ability to "call back" their assets at any time.

32.     Unbeknownst to Plaintiffs and the Class, Genesis's financial condition deteriorated significantly throughout 2022. Public reporting reflected that Genesis sustained severe losses from its exposure to collapsing entities in the digital-asset market, including 3AC, Terraform Labs ("TFL"), and later FTX. These events caused substantial impairment of Genesis's liquidity and its ability to meet redemption requests. Genesis's deteriorating financial condition created a substantial risk to Earn users because Genesis was the *exclusive* borrower of Gemini Earn user assets.

33.     Publicly filed information indicates that on October 20, 2022, DCG founder Barry Silbert, the parent company of Genesis, had an in person meeting with Cameron Winklevoss[2] and disclosed that Genesis *faced an imminent risk of bankruptcy*, that Genesis *had insufficient liquidity to return Earn user deposits,* and that *ending or altering the Earn partnership could trigger a "bank run" and place Gemini's Earn users and hence Gemini at significant risk*. Gemini did not disclose this information to Plaintiffs and other Class Members and nevertheless continued to solicit and accept assets into the Gemini Earn program after receiving this information.

---

[2] Which suggested a number of discussions had taken place prior to such in person meeting concerning the same subject matter.

4899-1818-0474, v. 6

34.     Gemini either knew, or as a New York trust company and agent acting on behalf of Gemini Earn users should have known, about Genesis's mounting liquidity problems, concentrated counterparty exposure, and inability to meet redemption obligations. Despite this, Gemini continued to market Earn, continued to solicit deposits from retail consumers, and continued to assure users that their assets remained redeemable and safe.

35.     Gemini did not disclose to Plaintiffs or the Class that Genesis's financial position had materially weakened, that Genesis was under redemption stress, or that Genesis might be unable to return assets to Gemini upon customer demand. Gemini did not amend or correct its prior assurances about redemption rights, borrower vetting, or financial stability, nor did it suspend marketing of Earn or warn users of the risks.

36.     Plaintiffs and members of the Class relied on Gemini's status as a NY Trust Company and its representations regarding safety, liquidity, and Gemini's oversight of Genesis when depositing digital assets into the Earn program. Based on these representations, Plaintiffs reasonably believed that their assets were protected, that they could withdraw their assets at any time, and that Gemini actively monitored Genesis's solvency and counterparty risk.

37.     As a result of the violations of the federal securities laws and state law violations alleged herein, Plaintiffs and members of the Class were damaged as a result of denial of access to their digital assets, the appreciation of the underlying value of their assets, and the damages occasioned by Defendants' acts leading to the denial of access to their assets on or about November 16, 2022, as described herein.

38.     By January 19, 2023, Genesis and certain of its affiliates filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101—1532, in the United States Bankruptcy Court for the Southern District of New York, jointly administered under

the lead case *In re: Genesis Global Holdco*, Case No. 23-10063 (SHL) (Bankr. S.D.N.Y.) (the "Genesis Bankruptcy Action"). Under section 362(a) of the Bankruptcy Code, the filing of Genesis's voluntary petition gave rise to a stay of claims against Genesis. But for its bankruptcy, plan confirmation, Genesis would have been named as a defendant for its participation in the wrongful conduct alleged herein.

<u>**SECURITIES ACT CLAIMS**</u>

39.     The Securities Act claims are contained in this section of this complaint. The Securities Act claims expressly do not make any allegations of fraud or scienter and *do not* incorporate any of the allegations contained in the Exchange Act allegations, including the allegations of scienter and fraud.

40.     During the Class Period, Genesis Global Capital together with Gemini offered and sold securities (the "Genesis Yield") to Plaintiffs and members of the Class whereby Plaintiffs and members of the Class tendered consideration (the investment principal) to Gemini who in turn provided it to Genesis Global Capital in exchange for Genesis' promise to pay back the investment principal, together with accrued interest, on demand *all of which* was coordinated by and through Gemini.

41.     The Securities Act requires that any security offered or sold to the public be registered with the Securities and Exchange Commission unless the offering qualifies for an exemption from registration. The registration process is designed to provide investors with full and fair disclosure of material information necessary to evaluate an investment.

42.     Neither Genesis nor Gemini registered the offer or sale of the securities with the SEC and there was no registration statement in effect as to the Genesis Yield securities as required under Section 5 of the Securities Act. Because no applicable exemption from registration applied,

Defendants' failure to register the Genesis Yield securities violated Section 5 of the Securities Act.

43.     Users like the Plaintiffs and Class Members could not negotiate the terms of the Gemini Loan Agreements, which were standard form tri-party contracts. Gemini acted as the sole point of access for retail investors, aggregated digital assets deposited into the Gemini Earn program, and delivered those assets to Genesis on behalf of Earn users. Genesis retained the assets, pooled them with other investor assets, and used them in its lending operations to institutional counterparties.

44.     Gemini publicly marketed the Gemini Earn program to retail investors nationwide. These marketing efforts included the publication of offered interest rates, promotional materials describing Earn as a means to "earn yield," and representations that users could redeem their assets at any time. The Gemini Earn program was available to any Gemini account holder and was not limited to accredited or institutional investors.

45.     At the time Plaintiffs and the Class invested, they lacked material information that would have been provided in a registered offering, including information regarding Genesis's financial condition, liquidity, exposure to distressed institutional borrowers, the absence of collateral securing user assets, and the risks associated with the pooling and deployment of user assets.

46.     Because Gemini offered or sold securities to members of the Class in violation of Section 5 of the Securities Act, Gemini violated Section 12(a)(1) of the Securities Act and Plaintiffs and members of the Class are entitled to recover the consideration paid for the securities less the amount of any income received thereon, upon the tender of such security, or for damages if the securities are no longer owned.

47.     Under Section 15 of the Securities Act, the following Defendants were controlling

4899-1818-0474, v. 6

persons of Gemini during the Class Period through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controlled Gemini: a) Defendant Tyler Winklevoss; b) Defendant Cameron Winklevoss and; c) John Does 1-10 whose identities will be discovered through the course of discovery herein.

48.     Because the Defendants were controlling persons of the Company, each of them is liable jointly and severally with and to the same extent as Gemini to Plaintiffs and members of the Class under Section 15 of the Securities Act.

## OVERVIEW OF THE EXCHANGE ACT CLAIMS

49.     The Exchange Act claims are brought under Section 10(b) of the Exchange Act, and codified at 17 C.F.R. § 240.10b-5 against the Defendants.

50.     Rule 10b-5 under Section 10(b) of the Exchange Act states that "it shall be unlawful for any person . . . (a) [t]o employ any device, scheme, or artifice to defraud, (b) [t]o make any untrue statement of a material fact or to omit to state a material fact . . . or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

51.     During the Class Period, as alleged below, in violation of Section 10(b) the Defendants made materially false and misleading statements in violation of Section 10b-5(b), employed a device, scheme or artifice to defraud, and engaged in practices or a course of business which operated or would operate as a fraud or deceit upon Plaintiffs and other members of the Class.

52.     Defendants      defrauded      investors      in      at      least      two      ways: (1) by making materially false and misleading statements about the integrity of the Gemini

platform, and failing to disclose material facts that in light of the circumstances should have been disclosed concerning the risk management policies and procedures of Genesis; and (2) in failing to take action in response to the liquidity crises at Genesis as a result of counterparties' bankruptcy (i.e., FTX, 3AC, and FTL), which in effect rendered Genesis insolvent, the Defendants misled Plaintiffs and the Class as to the stability and ability of Plaintiffs and other Class Members to withdraw their assets from Gemini.

## **ADDITIONAL GEMINI CLAIMS**

53.     In connection with Gemini Earn, Gemini published the yield rates for different assets on the Gemini Earn page. On February 1, 2021, the Earn Page set forth yield rates that Earn users could receive on their invested digital assets as follows:



## Interest Rates

| Asset | APY | Asset | APY | Asset | APY |
|-------|-----|-------|-----|-------|-----|
| Aave AAVE | 5.83% | Amp AMP | 1.98% | Balancer BAL | 1.54% |
| Basic Attention Token BAT | 3.49% | Bitcoin Cash BCH | 4.55% | Bitcoin BTC | 3.05% |
| Compound COMP | 2.47% | Curve CRV | 1.98% | Dai DAI | 4.16% |
| Ether ETH | 3.05% | Filecoin FIL | 7.40% | Kyber Network KNC | 2.58% |
| Chainlink LINK | 4.46% | Litecoin LTC | 5.10% | Decentraland MANA | 1.80% |
| Maker MKR | 1.98% | Orchid OXT | 2.47% | PAX Gold PAXG | 3.92% |
| Ren REN | 2.71% | Synthetix SNX | 2.69% | Storj STORJ | 1.98% |
| Uma UMA | 2.69% | Uniswap UNI | 3.59% | Yearn.finance YFI | 3.29% |
| Zcash ZEC | 2.25% | 0x ZRX | 3.68% | | |

54.     These rates frequently changed. For example, it has been widely reported that an

4899-1818-0474, v. 6

Earn investor who invested one bitcoin at the start of the Earn program could have earned 3.05% APY on that investment in February 2021, 2.05% in May 2021, 1.65% APY in August 2021, 1.49% APY in September 2021, and 1.01% in February 2022.

55.     Upon information and belief, Gemini claimed the rates it offered were more than 100x the average national interest rate, among the highest rates on the market.

56.     Genesis and Gemini controlled the interest rates and stated to investors: "rates may increase or decrease in the future."

57.     To invest, Gemini users like BAO Family Holdings LLC entered into the Genesis Yield Investment agreement with Genesis and Gemini, and expressly appointed Gemini as their agent for purposes of their Genesis Yield investments. The agreement was a standard agreement and not individually negotiated with Gemini Earn investors. Genesis Yield investments made via Gemini Earn were open term investments, meaning that investors could redeem their investment *at any time* by notifying their agent Gemini.

58.     The accrual of interest on the Genesis Yield securities were calculated using a daily periodic rate applied to the principal invested, and interest was paid the month after it accrued. Interest payments were denominated in the same type of cryptocurrency or digital asset (or cash) originally invested.

59.     In each Genesis Yield Investment Agreement, Genesis Global Capital made the following representations to investors:

[Genesis Global Capital] represents and warrants that it is not insolvent and is not subject to any bankruptcy or insolvency proceedings under any applicable laws. (the "Solvency Warranty")

[Genesis Global Capital] represents and warrants there are no proceedings pending or, to

its knowledge, threatened, which could reasonably be anticipated to have any adverse effect on the transactions contemplated by this Agreement or the accuracy of the representations and warranties hereunder or thereunder. (the "Adverse Proceedings Warranty").

60.     Importantly, each Genesis Yield Investment Agreement executed by each Genesis Yield investor with Genesis Global Capital stated that the Solvency Warranty and Adverse Proceedings Warranty "shall continue" during the term of the investments.

61.     To generate the yield promised to investors, Genesis Global Capital commingled and/or pooled Genesis Yield investor principal with those of other Genesis Yield investors, held Genesis Yield investor's principal in accounts in Genesis Global Capital's name or other names; pledged, repledged, hypothecated, rehypothecated, sold, lent, staked, arranged for staking, and otherwise transferred Genesis Yield investors' digital assets separately or together with other property; and otherwise used or invested such digital assets or currency at the investor's sole risk.

62.     Gemini played a central role in misleading Gemini Earn users by issuing repeated public statements on social media including:



https://x.com/GenesisTrading/status/1356606264130871299?s=20.

63.     In an FAQ entitled "What are the risks of Gemini Earn?" on the Gemini Earn

website, Gemini described the program as an investment:

> Cryptocurrency, like many assets, can be volatile and subject to price
> swings. There is always a risk in **investing**, and each customer needs to
> assess their own risk tolerance before making any investment decisions. Our
> partners in Gemini Earn have an obligation to return funds according to the
> terms of their loan agreement. However, Gemini Earn customers (the
> lenders) always assume some level of risk when they decide to lend their
> funds. We believe **Gemini Earn gives our retail investors another way
> to stay long-term in the asset class and have the option to invest and
> earn interest**, all on the Gemini platform.

(Emphasis added).

64.     In a blog post on Gemini's website dated January 7, 2019, Tyler Winklevoss

promoted a "full-page ad in the *New York Times* outlining what we think the cryptocurrency

revolution needs to succeed," falsely highlighting that Gemini would "work with regulators to

establish thoughtful regulation that promotes positive and fair outcomes for all," and stating publicly

### 1. Build the Rules.

*To work with regulators to establish thoughtful regulation that promotes positive and fair outcomes for all.*

### 2. Play by the Rules.

*To operate with necessary governmental or regulatory approvals. Ask for permission, not for forgiveness.*

### 3. Value Security Over Profit.

*To never cut corners. To set the standard and follow best practices in order to provide a platform that is free of hacking and fraud.*

### 4. Be Principled.

*To do the right thing—because it's the right thing—even when it's the hard thing. To put the interests of our customers ahead of our own and provide proper disclosures and transparency.*

### 5. Pay it Forward.

*To bring cryptocurrency to the people and places that need it most.*

65.     Gemini similarly promoted the profit that investors could earn through the Gemini Earn program. In a February 2021 press release launching Gemini Earn, Defendant Tyler Winklevoss stated "We designed a platform that allows our customers to generate a real return on their crypto holdings."  On February 27, 2021, Gemini also posted a video on YouTube titled, "Invest Better with Gemini Earn." On its website, Gemini described how users would earn interest, noting, "We are excited to launch Gemini Earn and offer more opportunities for you to grow your

portfolio and earn yield." Similarly, Gemini advertised on its website that investors could "[p]ut your crypto to work. With Gemini Earn, you can receive up to 8.05% APY on your cryptocurrency," and listed the interest rate that investors could earn for each eligible crypto asset.

66.     There was no minimum investment amount to be eligible to participate in the Gemini Earn program. As of November 16, 2022, over 340,000 investors, most residing in the United States, had crypto assets invested in Genesis Yield through Genesis Yield Investment Agreements implemented by Gemini.

67.     Gemini, through websites and social media, promoted Genesis Yield securities as an investment, specifically as a way to earn high "returns" or "yield" for investors through digital assets.

68.     Gemini received deposits of US Dollars from customers, provided an exchange to purchase cryptocurrencies and charged fees therefore, then further solicited users like the Plaintiffs to permit Gemini to retain custody of those cryptocurrencies for use in connection with the Gemini Earn program.



69.     Gemini repeatedly described Gemini Earn as an investment on its own website and

social media and repeatedly touted that Gemini Earn interest rates were "among the highest rates on the market" and "higher than most existing options." Gemini's website further claimed that Gemini Earn investors could "receive more than 100x the national interest rate."

70.     As alleged above, Gemini received direct notice from Genesis via Barry Silbert the chief of its corporate parent that on October 20, 2022, Genesis was facing bankruptcy risk in an in person meeting that by its terms suggests was one in a long series of discussions.

71.     Although Gemini is registered with NYSDF as a New York limited purpose trust company, NYSDF did not have oversight over Genesis, Gemini's *sole* "borrower."

72.     Upon information and belief, months before the launch of the Gemini Earn program, Gemini knew that Genesis was regulated only by FinCEN and, in fact, categorized Genesis Capital's lack of regulation as a "high" risk factor in internal documents.

73.     FinCEN, the Financial Crimes Enforcement Network, is a bureau of the United States Department of the Treasury that collects and analyzes information about financial transactions in order to combat domestic and international money laundering, terrorist financing, and other financial crimes. FinCEN does not purport to regulate securities or the disclosure of risks to investors.

74.     In participating in the Earn Program, Gemini led Plaintiffs and other Class members to expect that, by tendering and giving control of their digital assets to Gemini, and conversely to Genesis Global Capital, (1) they would receive profit in the form of interest on those assets, up to 8.05% annual percentage yield ("APY"), and (2) their digital assets would remain safe until their return.

75.     Plaintiffs and Class Members reasonably relied on the Gemini Defendants misrepresentations and omissions, as set forth herein, to their detriment, and would not have

otherwise entered into the Genesis Yield Investment Agreements.

76.     In November of 2022, and the weeks leading up to the suspension by Gemini of Gemini Earn withdrawals, the Gemini Defendants repeatedly issued public statements on social media, which Gemini knew or had reason to know were materially false concerning the liquidity of Genesis and its ability to return to Gemini Earn users their digital assets.

77.     Knowing full well what was about to transpire, prior to the Genesis chapter 11 bankruptcy filing, the Winklevoss Defendants reportedly withdrew nearly 282 million dollars from Gemini, no mention of this was made to Earn users.

78.     In fact, just two days prior to the suspension of all withdrawals from the Gemini Earn program, on November 14, 2022, the Defendants sent communications to the Plaintiffs and other Class members and published online advertisements on the Gemini website:

For the avoidance of doubt, **Gemini has no exposure to FTT tokens or Alameda and no material exposure to FTX.**

### Gemini is a Full-Reserve Exchange and Custodian

Gemini is a full-reserve exchange and custodian. This means that **all customer funds held on Gemini are held 1:1 and available for withdrawal at any time.**

Gemini holds customer fiat currency in accounts that are segregated from our business, operating, and reserve bank accounts established specifically for the benefit of Gemini customers. **We do not do anything with your fiat funds unless explicitly authorized and directed to do so by you.**

Gemini holds customer digital assets in accounts that are segregated from our assets. **We do not do anything with your digital assets unless explicitly authorized and directed to do so by you.**

In addition to being a full-reserve platform, Gemini Trust Company, LLC is a fiduciary and qualified custodian under New York Banking Law and is licensed by the New York State Department of Financial Services (NYDFS). NYDFS imposes certain excess capital requirements and compliance standards for all assets held on Gemini. **At any given time, Gemini is required to hold capital in excess of customer deposits and must report any material changes in this capital to its regulator.**

79.     The injuries suffered by Plaintiffs and the Class are concrete and particularized. The Genesis Bankruptcy Court formally recognized Earn users, including Plaintiffs, as creditors

holding legally protected property interests in their digital assets. The loss of control, use, and appreciation of those assets constitutes a significant and concrete economic injury sufficient to confer Article III standing.

## CLASS ALLEGATIONS

80.     Plaintiffs bring this Action as a class action under Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of themselves and all others similarly situated. Plaintiffs and all Class Members were subjected to the same standardized Gemini Earn Agreements, the same Gemini Yield securities, structure, uniform marketing and representations by Gemini, and the same suspension of withdrawal rights on November 16, 2022. Plaintiffs seek class wide relief for themselves and all persons and entities who bought cryptocurrency assets and transferred digital assets into Gemini Earn during the Class Period and those who transferred custody from outside of Gemini to Gemini wallets like plaintiff Brett Osborn and thereafter unable to withdraw or redeem those assets commencing on November 16, 2022.

Class Definition

81.     The proposed Class consists of: All persons and entities who, during the Class Period, transferred digital assets into Gemini Earn or purchased Genesis Yield securities through the Gemini platform and were unable to withdraw or redeem those assets following the November 16, 2022 suspension of withdrawals. Excluded from the Class are Defendants; any entity in which a Defendant has a controlling interest; Defendants' officers, directors, agents, and employees; Defendants' representatives, heirs, successors, and assigns; and any judicial officer assigned to this Action and their staff.

Ascertainability

82.     The Class is readily ascertainable. Gemini maintains detailed, timestamped electronic records for all Earn transfers, account balances, withdrawal attempts, communication

4899-1818-0474, v. 6

histories, interest credits, and user-identifying information. These records were submitted to and relied upon by the Genesis Debtors, Gemini, and the Bankruptcy Court in connection with the Earn Master Claim filed in the Genesis Bankruptcy Proceeding (the "Master Claim"), confirming their reliability and completeness for the purpose of identifying Class Members.

Numerosity (Rule 23(a)(1))

83.     Numerosity is satisfied. Gemini repeatedly represented, and Genesis and its related bankruptcy entities confirmed in bankruptcy, that approximately 340,000 Earn accounts existed at the time of the withdrawal suspension. The Genesis Bankruptcy Court accepted these figures during the settlement approval process. Joinder of all Class Members is therefore impracticable.

Commonality (Rule 23(a)(2))

84.     There are numerous questions of law and fact common to the Class, including but not limited to:

a.  whether Gemini Earn and Genesis Yield constitute "securities" under federal law;

b.  whether Gemini offered or sold unregistered securities;

c.  whether Gemini made uniform, materially false representations concerning safety, liquidity, borrower due diligence, and redemption rights;

d.  whether Gemini omitted material facts regarding Genesis's financial condition;

e.  whether Gemini owed fiduciary or statutory duties to Gemini Earn users as a New York trust company;

f.  whether Gemini acted as an agent with duties arising under the Gemini Earn Agreements and Genesis Yield Agreements;

g.  whether Gemini breached those duties to Plaintiffs and the Class;

CLASS ACTION COMPLAINT
22

    h.   whether Plaintiffs and Class Members suffered damages and in what amounts as a result of the November 16, 2022 suspension; and

    i.   whether classwide relief, including rescission, restitution, or damages, is appropriate.

85.    These questions are common because all Gemini Earn users were subject to:

    a.   a single uniform program structure;

    b.   the same standardized Earn Agreements;

    c.   the same agency arrangement disclosed in the Gemini Yield securities;

    d.   the same Gemini marketing statements and platform representations;

    e.   a single borrower—Genesis—for all Gemini Earn assets; and

    f.   the same undisclosed counterparty and liquidity risk concentrated in Genesis.

86.    Plaintiffs' claims are typical of the Class. Plaintiffs purchased crypto currency and transferred cryptocurrency to Gemini and deposited their digital assets into Gemini Earn, relied upon Gemini's uniform statements about safety and liquidity, were subjected to the same undisclosed risks associated with Genesis's financial condition, and suffered identical harm when withdrawals were frozen on November 16, 2022. Plaintiffs' claims arise from the same nucleus of facts and legal theories as those of all Class Members.

<u>Adequacy (Rule 23(a)(4))</u>

87.    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests align entirely with those of all Gemini Earn users, and Plaintiffs have retained counsel with extensive experience in federal securities litigation, consumer-protection class actions, digital-asset disputes, and bankruptcy-related litigation.

4899-1818-0474, v. 6

88. Plaintiffs also bring unique knowledge, insight, and demonstrated commitment to the protection of Gemini Earn users because they were among the very few Gemini Earn participants who actively engaged in the Genesis bankruptcy proceedings—not merely by filing a single document, but by meaningfully monitoring, analyzing, responding to, and engaging with the case as it unfolded and during the plan process. Plaintiffs reviewed pleadings, drafted submissions, participated in the settlement process, communicated with counsel for multiple stakeholders, tracked hearings, evaluated the Gemini Earn Master Claim, and addressed issues affecting the Gemini Earn user population as a whole.

89. Plaintiffs' involvement included substantive review of: (a) the Gemini and Genesis adversary complaints; (b) the Earn Master Claim (Claim No. 356); (c) the proposed global settlement among the Debtors, Gemini, the Ad Hoc Group, and the Creditors' Committee; (d) the Earn distribution waterfall; (e) the proposed treatment of Gemini Earn users relative to other creditor constituencies; and (f) the numerous drafts of the Rule 9019 settlement order.

90. Plaintiffs analyzed the consequences of the settlement on Gemini Earn users' independent rights, communicated concerns to relevant parties, and ensured that the interests of Gemini Earn users were represented in the settlement process. Plaintiffs' active and sustained engagement promoted transparency and the protection of Gemini Earn users' rights, benefiting not only Plaintiffs themselves, but all similarly situated account holders.

91. As a direct result of the issues Plaintiffs and other Earn users raised, the Bankruptcy Court incorporated crucial clarifications into the final 9019 Settlement Approval Order [Doc. 1598] in the Genesis Bankruptcy Action which resulted in return of cryptocurrencies to Gemini Earn users in such amounts as existed on November 16, 2022. These clarifications included:

    a.   that Gemini acted solely as an agent for Earn users;

4899-1818-0474, v. 6

b. that Earn users' claims against Gemini were *not* released or impaired;

c. that Section 10.8 of the Settlement Agreement expressly preserved Gemini Earn users' rights with respect to the Master Claim and

d. that the settlement resolved only the Debtors' liabilities—not Gemini's.

<u>Predominance (Rule 23(b)(3))</u>

92.     These Bankruptcy Court findings materially strengthen Rule 23's commonality and predominance requirements. The Bankruptcy Court in the Genesis Bankruptcy Action found that all Gemini Earn users were governed by the same program structure, the same agency relationship, the same Gemini Earn Agreements, and the same centralized counterparty risk. This confirms that Plaintiffs' claims and Class Members' claims arise from a uniform course of conduct.

93.     Plaintiffs' engagement also enhances the adequacy showing under Rule 23(a)(4). Plaintiffs demonstrated the ability and willingness to advocate for Gemini Earn users in a sophisticated federal bankruptcy proceeding, literally protecting the rights asserted in this Action before another federal court. Plaintiffs' prior actions demonstrate that they will continue to vigorously represent the Class here.

94.     Plaintiffs' bankruptcy participation further supports ascertainability because the Bankruptcy Court relied upon Gemini's Earn-user data to administer notice, distribute pleadings, and determine creditor populations. These same records identify the Class with precision.

95.     Plaintiffs' review of the Gemini Earn Master Claim and distribution schedules confirms the Class's size, supporting numerosity, and demonstrates that the Earn user population was treated as a discrete, uniform creditor group—further supporting classwide treatment here.

<u>Superiority (Rule 23(b)(3))</u>

96.     Plaintiffs' experience in the bankruptcy also supports superiority under Rule 23(b)(3). Plaintiffs witnessed firsthand that individual Gemini Earn users lacked meaningful

ability to protect their own interests in the bankruptcy forum, reinforcing the need for coordinated action through representative litigation.

97.    Plaintiffs' detailed understanding of the Gemini Earn Program's contractual structure, Gemini's agency role, Genesis's financial distress, and the settlement's legal consequences equips them to effectively assist the Court in managing and adjudicating the claims on behalf of the Class.

98.    Plaintiffs' involvement in the Gensis Bankruptcy Proceedings and the beneficial clarifying findings secured there, reinforce and strengthen each Rule 23 requirement—commonality, typicality, adequacy, predominance, and superiority—and confirm that Plaintiffs are appropriate and capable representatives of the proposed Class.

<u>Reservation of Class Definition and Subclasses</u>

99.    Plaintiffs reserve the right to amend or modify the Class definition or to propose subclasses as warranted by evidence developed during discovery.

**COUNT I**
**(Control Person Liability for Violation of the Securities Act Section 5, Section 12(a)(1) and Section 15 of the Securities Act)**

100.    Plaintiffs repeat and reallage the foregoing allegations of the Complaint as if fully set forth at length herein.

101.    This claim is asserted pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o.

102.    This claim is based on strict liability.

103.    Section 15 of the Securities Act provides: "Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77*l* of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom

CLASS ACTION COMPLAINT
26

such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist." *Id*. § 77o(a).

104.    Section 5(a) of the Securities Act states: "Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale." 15 U.S.C. § 77e(a).

105.    Section 5(c) of the Securities Act states: "It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title." *Id.* § 77e(c).

106.    As alleged herein Gemini directly or indirectly and by other means made communications in interstate commerce or of the mails sold and offered Genesis Yield securities without registering the securities offering or qualifying for an exemption from registration issued communication in interstate commerce or of the mails sold and offered Genesis Yield securities without registering the securities offering or qualifying for an exemption from registration to all Earn Users.

4899-1818-0474, v. 6

107.     Under Section 12(a)(1) of the Securities Act, any person who offers or sells a security in violation of Section 5 of the Securities Act shall be liable to the person purchasing such security from the offeror or seller and may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if the security is no longer owned.

108.     At the time of the violations of Sections 5 of the Securities Act Defendants controlled Gemini.  But for its Bankruptcy Proceedings, Genesis Global Capital LLC would be named herein.

### COUNT II
### (For violation of Section 10(b) of the Exchange Act and Rule 10(B)-5)

109.     Plaintiffs repeat and reallage the foregoing allegations of the Complaint as if fully set forth at length herein.

110.     This claim is brought under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 against Gemini.

111.     In connection with the offer and sale of Gemini Earn securities, Gemini made untrue statements of material fact and omitted material facts necessary to make its statements not misleading. Gemini further employed schemes and artifices to defraud Plaintiffs and the Class.

112.     Gemini repeatedly represented that digital assets placed into Gemini Earn were safe, secure, and subject to rigorous risk management standards, and that customers could redeem their assets at any time. Gemini publicly touted high yields while assuring users that Genesis, the sole borrower, was financially sound and capable of returning customer assets on demand.

113.     Gemini failed to disclose material facts, including: (a) escalating liquidity and counterparty risk at Genesis; (b) Genesis's deteriorating financial condition in 2022; (c) known

concentration of lending exposure creating immediate redemption risk; (d) internal assessments identifying Genesis as a high-risk borrower; and (e) the growing likelihood that Gemini Earn users like the Plaintiffs would be unable to withdraw their assets.

114.    Gemini knowingly or recklessly omitted and misrepresented material facts, including continuing to solicit deposits into Gemini Earn as late as November 2022 while internally aware that Genesis faced severe liquidity pressures and heightened default risk.

115.    Plaintiffs and the Class reasonably relied on Gemini's public statements, website representations, written materials, customer communications, and course of dealing. Such reliance was foreseeable given Gemini's role as custodian, trusted intermediary, and marketer of the Earn program.

116.    Plaintiffs' reliance on Gemini's representations was reasonable because Gemini held itself out as a regulated trust company with superior knowledge of borrower risk, custody safeguards, and counterparty oversight. Gemini's declarations of institutional-grade diligence, redemption assurances, and full-reserve custody created the reasonable expectation that Gemini would disclose material risks known to it and unavailable to Earn users.

117.    The truth was revealed on November 16, 2022, when Gemini suspended withdrawals, admitting that Genesis could not honor redemption requests. Plaintiffs and the Class lost access to their assets and suffered economic harm.

118.    Gemini's fraudulent and deceptive practices directly and proximately caused Plaintiffs' and the Class's damages, including loss of redemption rights, loss of use of their digital assets, and the appreciation of the underlying assets.

119.    Gemini is liable to Plaintiffs and the Class for damages in an amount to be proven at trial.

## COUNT III
### (Violation of the Florida Deceptive and Unfair Trade Practice Act
### Fla. Stat. Ann. §§ 501.201-501.213

120.    Plaintiffs repeat and reallege all allegations above as though fully set forth herein.

121.    Plaintiffs bring this claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201–501.213, on behalf of themselves and the Class.

122.    Gemini engaged in "trade or commerce" within the meaning of FDUTPA by marketing, offering, soliciting, receiving, and transmitting digital assets and U.S. dollars from consumers in Florida, including Plaintiffs.

123.    Gemini represented to consumers that the Gemini Earn program was safe, secure, and subject to adequate risk controls, and that customers could redeem their digital assets at any time. Gemini also represented that it performed prudent due diligence on Genesis as the sole borrower of customer assets.

124.    Gemini omitted material information necessary to prevent these representations from being misleading, including:

   a.   that Genesis's liquidity and financial condition had materially deteriorated;

   b.   that Genesis was experiencing mounting redemption pressures and counterparty exposure;

   c.   that Gemini had internally assessed Genesis as a high-risk borrower;

   d.   that Gemini knew or should have known that redemptions might not be honored; and

   e.   that customers' ability to access their assets was wholly dependent on Genesis's solvency.

125.    Gemini continued to solicit deposits and maintain customer positions in Gemini

4899-1818-0474, v. 6

Earn despite knowledge, or reckless disregard, that substantial risks to liquidity, redemption, and asset safety existed.

126.    These acts and omissions were likely to mislead reasonable consumers and constitute deceptive and unfair trade practices under FDUTPA.

127.    Independently, Gemini's conduct also constitutes a *per se* violation of FDUTPA. Under Fla. Stat. § 501.203(3)(c), any violation of a law designed to protect consumers constitutes a *per se* FDUTPA violation.

128.    Gemini violated the Florida Money Transmitter Act, Fla. Stat. § 560.204, by receiving money or "monetary value" and transmitting monetary value for Florida residents without being licensed as a money transmitter by the Florida Office of Financial Regulation.

129.    Gemini operated in Florida without the legally required money-transmitter license, while holding, transferring, and transmitting substantial monetary value for Florida consumers in connection with Gemini Earn.

130.    The Money Transmitter Act is a consumer protection statute, and Gemini's violation of Fla. Stat. § 560.204 constitutes a *per se* deceptive or unfair practice under FDUTPA.

131.    As a direct and proximate result of Gemini's deceptive, unfair, and unlawful conduct, Plaintiffs and the Class suffered actual damages, including loss of access to their digital assets, the appreciation of those assets, and other financial harm.

132.    Plaintiffs and the Class seek all available remedies under FDUTPA, including actual damages; declaratory and injunctive relief; prejudgment and post-judgment interest; and attorneys' fees and costs pursuant to Fla. Stat. § 501.2105.

## COUNT IV
### (Breach of Fiduciary Duty under NY Gen. Bus. Law)

4899-1818-0474, v. 6

133.    Plaintiffs repeat and reallege all allegations above as though fully set forth herein.

134.    Gemini is chartered and supervised as a New York Limited Purpose Trust Company under the New York Banking Law, including but not limited to §§ 100, 102-a, 131, 200, and 201 of the New York Banking Law.

135.    Trust companies like Gemini operating under this statutory framework are authorized to perform fiduciary functions, including the custody, safekeeping, and administration of customer assets. Because of this status, New York law imposes heightened statutory duties of loyalty, prudence, honesty, disclosure, and care whenever a trust company accepts assets from the public and undertakes to hold or manage them.

136.    By receiving Plaintiffs' digital assets, including those sold to Plaintiffs and Class Members and holding those assets in custody, and acting as the intermediary responsible for placing those assets with Genesis through the Gemini Earn program, Gemini assumed a position of trust and confidence.

137.    Gemini itself emphasized its regulated trust-company status as a core reason that users could rely on it for the safe handling and protection of their digital assets. Through its own representations and its role as custodian and agent, a fiduciary relationship arose between Gemini and Plaintiffs and the Class under New York law.

138.    As a fiduciary, Gemini was obligated to safeguard customer assets, exercise prudent judgment, act with undivided loyalty to its customers, and disclose material information affecting the safety and liquidity of those assets.

139.    Gemini also had a duty to monitor the risks associated with transferring customer assets to Genesis and to refrain from exposing customers to undisclosed or unreasonable counterparty hazards.

140.    Gemini breached these fiduciary duties. Despite possessing information indicating that Genesis's financial condition had weakened significantly and even including knowledge that Genesis would face bankruptcy risk months before November 16, 2021 cessation of withdrawals, and despite being aware of mounting liquidity pressures and concentrated counterparty exposure, Gemini continued to solicit and accept customer assets into the Earn program. Gemini assured users that their assets were safe and accessible even though it knew, or should have known, that redemption ability was directly dependent on Genesis's solvency and that such solvency had become doubtful. Gemini failed to disclose these facts and did not take reasonable steps to protect or safeguard users assets in light of the known risks.

141.    Gemini's conduct fell far short of the standards required of a New York trust company and violated its fiduciary obligations to Plaintiffs and the Class. As a direct and proximate result of these breaches, Plaintiffs and the Class lost access to their digital assets, lost the benefit of the appreciation of those assets, and suffered additional economic harms.

142.    Plaintiffs and the Class are entitled to compensatory damages, equitable relief, disgorgement, and all other remedies available under New York law for breach of fiduciary duty.

## COUNT V
### (Aiding and Abetting Breach of Fiduciary Duty)
### (Against Defendants Cameron Winklevoss, Tyler Winklevoss, and John Does 1–10)

143.    Plaintiffs repeat and reallege each and every allegation contained above as though fully set forth herein.

144.    Gemini owed fiduciary duties to Plaintiffs and the Class by virtue of its status as a New York limited purpose trust company charged with the custody, safekeeping, and administration of customer assets. Gemini breached those duties as alleged elsewhere in this Complaint.

4899-1818-0474, v. 6

145.     The Winklevoss Defendants and John Does 1–10 knowingly aided and abetted Gemini's breaches of fiduciary duty. These Defendants exercised control and authority over Gemini's operations, including the Earn program, marketing communications, risk disclosures, borrower due diligence, and financial representations.

146.     The Winklevoss Defendants knew or should have known that Genesis faced severe liquidity issues and insolvency risk months before the November 16, 2022 withdrawal suspension. Despite this knowledge, these Defendants permitted Gemini to continue soliciting deposits into the Earn program, failed to correct misleading statements, and allowed Gemini to conceal material risks.

147.     The Winklevoss Defendants further demonstrated their knowledge of the impending collapse by withdrawing more than $120 million in personal digital assets from Gemini shortly before Genesis filed for bankruptcy.

148.     By knowingly participating, assisting, and enabling Gemini's breaches of fiduciary duty, and by failing to prevent those breaches despite their authority to do so, the Winklevoss Defendants and John Does 1-10 are liable for aiding and abetting those breaches under New York law.

149.     As a direct and proximate result of the Defendants' conduct, Plaintiffs and the Class suffered damages including loss of access to their digital assets and the appreciation thereof.

150.     Plaintiffs and the Class seek compensatory damages, equitable relief, disgorgement, and all other remedies permitted under New York law

**COUNT VI**
**(NY Consumer Protection Law New York General Business Law § 349 against Gemini)**

151.     Plaintiffs repeat and reallege all allegations above as though fully set forth herein.

4899-1818-0474, v. 6

152.     New York General Business Law § 349 prohibits deceptive acts and practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the State of New York. The statute is designed to protect the public from practices that are misleading in a material way and that have a broader impact on consumers.

153.     Gemini is a New York limited purpose trust company that marketed, solicited, and administered the Gemini Earn program from within New York. Its representations regarding the safety, liquidity, and reliability of Gemini Earn were directed at a national consumer audience, including Plaintiffs and the Class. Because the conduct emanated from New York and was intended to reach consumers at large.

154.     Gemini engaged in deceptive acts and practices by promoting the Earn program as a secure and well-managed platform for generating yield on digital assets, while withholding critical information about the true risks associated with the program. Gemini failed to disclose that the safety of customers' assets depended entirely on the financial stability and continuing solvency of Genesis, and that Genesis was experiencing deteriorating liquidity conditions that placed customer assets at risk. Gemini also failed to disclose that its own internal assessments had identified Genesis as a high-risk borrower and that redemption ability could be impaired.

155.     These omissions and representations were misleading to a reasonable consumer and created the false impression that Gemini Earn offered a safe and dependable method of earning yield, comparable to more traditional financial accounts. In truth, the program exposed consumers to significant, undisclosed counterparty and liquidity risk.

156.     Gemini's conduct was consumer-oriented and affected thousands of Earn users across the United States, most of whom were retail consumers with no access to the information Gemini possessed. Plaintiffs and the Class suffered actual injury as a result of this deceptive

conduct, including the loss of access to their digital assets and the appreciation and economic benefits associated with those assets.

157.     Plaintiffs and the Class are entitled to all remedies available under GBL § 349, including actual damages, statutory damages, injunctive relief, attorneys' fees, and any other relief the Court deems just and proper.

## COUNT VI
### (Fraudulent Concealment / Equitable Tolling)

158.     Plaintiffs repeat and reallege the foregoing allegations as though fully set forth herein.

159.     Defendants concealed material facts that Plaintiffs and the Class could not reasonably have discovered through ordinary diligence. Before the suspension of withdrawals on November 16, 2022, Defendants possessed detailed knowledge that Genesis faced severe liquidity shortages, redemption pressure, concentrated counterparty exposure, and a substantial risk of insolvency. Despite this knowledge, Defendants continued to promote the Earn program as safe, secure, and redeemable "at any time," and affirmatively represented that Genesis remained financially sound. Defendants did not disclose any information that would have put Plaintiffs or the Class on notice that their assets were at risk or that Genesis was unable to return the assets upon demand.

160.     The concealed information was known exclusively to Defendants and was not available to the public. Plaintiffs and the Class reasonably relied on Defendants' expertise, trust-company status, and representations concerning risk management and borrower oversight. Because Defendants actively concealed these facts and prevented discovery of the truth, Plaintiffs and the Class could not have discovered the basis for their claims until the withdrawal freeze publicly revealed Genesis's inability to honor its obligations.

4899-1818-0474, v. 6

161.    Defendants' conduct tolled the applicable statutes of limitation under the doctrines of fraudulent concealment, equitable estoppel, and equitable tolling. Plaintiffs and the Class bring their claims within the time permitted by law, because the misconduct and resulting injuries could not have been discovered earlier through reasonable diligence.

### COUNT VII
### (Violation of the Florida Securities Act)
### (Unregistered Securities – Fla. Stat. § 517.07 et seq.)

162.    Plaintiffs repeat and reallege the foregoing allegations as though fully set forth herein.

163.    During the Class Period, Gemini offered and sold investment contracts to Plaintiffs and Class Members residing in Florida through what it called the Gemini Earn program. These transactions constitute the offer and sale of securities under Florida law. Florida's Securities Act requires that all securities offered or sold in the state be registered unless an exemption applies. Gemini was not registered to offer or sell securities in Florida, and no exemption applies to the Earn investment contract.

164.    Gemini solicited, offered, and sold these unregistered securities to Florida residents, including Plaintiffs, without providing the disclosures, protections, or oversight required under Florida's securities laws. Plaintiffs and the Class tendered digital assets and other consideration to Gemini in exchange for the promised return of principal and yield, creating a security that should have been registered with Florida's Office of Financial Regulation.

165.    Gemini's offer and sale of unregistered securities in violation of Florida Statutes § 517.07 renders it liable under § 517.211. Plaintiffs and the Class are entitled to rescission, statutory damages equal to the consideration paid for the securities, interest, court costs, and attorneys' fees.

### COUNT VIII
### (Violation of the Florida Securities and Investor Protection Act)

166.    Plaintiffs repeat and reallege the foregoing allegations as though fully set forth herein.

167.    Gemini engaged in conduct that violated the Florida Securities and Investor Protection Act by offering and selling securities to Florida residents through the Earn program under circumstances that were deceptive, misleading, and contrary to the protections guaranteed under Florida law. Gemini's promotional materials, platform disclosures, and communications to users created the false impression that the Earn program was safe, fully redeemable, and supported by adequate risk management, when in fact Gemini knew or should have known that Genesis, the sole borrower, was experiencing significant and escalating financial distress.

168.    Gemini's omissions and misrepresentations had the effect of inducing Florida residents to entrust substantial assets to a program that was materially more risky than represented. Gemini's conduct violated the Act's provisions prohibiting fraudulent or deceptive practices in connection with the offer or sale of securities in the State of Florida.

169.    Plaintiffs and Class Members relied on Gemini's representations when deciding to participate in the Earn program. As a result of Gemini's statutory violations, Plaintiffs and the Class suffered losses, including loss of access to their digital assets and the appreciation of those assets. Plaintiffs seek all remedies available under the Act, including rescission, damages, interest, attorneys' fees, and any other relief the Court deems just and proper.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, on behalf of themselves and the Class, demand a judgment against Defendants as follows:

(a) Declaring this action is properly maintainable as a class action;

4899-1818-0474, v. 6

(b) Declaring that Defendants actions, as set forth above, violate the federal and state laws set forth above;

(c) Awarding compensatory, special, consequential, punitive and exemplary damages against Defendants in an amount to be determined at trial;

(d) Awarding equitable and injunctive relief, including, without limitation, recission, restitution, and disgorgement;

(e) Awarding statutory relief under federal and state law;

(f) Awarding reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action;

(g) Awarding pre-judgment and post-judgment interest; and

(h) Granting such other and further relief as the Court deems necessary and proper.

Dated: November 15, 2025

Respectfully submitted,

**MEDINA LAW FIRM LLC**

By: */s/ Eric S. Medina____*
Eric S. Medina, Esq.
Florida Bar #72179
**MEDINA LAW FIRM LLC**
1200 N. Federal Highway
Suite 200
Boca Raton, FL 33142
Phone: (954) 859-2000
Fax: (888) 833-9534
emedina@medinafirm.com

*Attorneys for Plaintiffs Class*
*Representatives BAO Family*
*Holdings LLC and Brett Osborn*

4899-1818-0474, v. 6

## <u>JURY DEMAND</u>

**PLEASE TAKE NOTICE** that Plaintiffs and the Class Members demand a trial by jury

on all issues so triable.

Dated: November 15, 2025

                                      **MEDINA LAW FIRM LLC**

By: *<u>/s/ Eric S. Medina</u>*____
Eric S. Medina, Esq.
Florida Bar #72179
**MEDINA LAW FIRM LLC**
1200 N. Federal Highway
Suite 200
Boca Raton, FL 33142
Phone: (954) 859-2000
Fax: (888) 833-9534
emedina@medinafirm.com
*Attorneys for Plaintiffs Class*
*Representatives BAO Family*
*Holdings LLC and Brett Osborn*

CLASS ACTION COMPLAINT

4899-1818-0474, v. 6